**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 17a0610n.06

CASE NO. 16-2342

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| COMMERCIAL LAW CORP. P.C., | ) | **FILED** |
| | ) | Nov 06, 2017 |
| *Plaintiff-Appellant,* | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | |
| | ) | **ON APPEAL FROM THE** |
| FEDERAL DEPOSIT INSURANCE | ) | **UNITED STATES DISTRICT** |
| CORPORATION, as RECEIVER for | ) | **COURT FOR THE EASTERN** |
| HOME FEDERAL SAVINGS BANK, | ) | **DISTRICT OF MICHIGAN** |
| | ) | |
| *Defendant-Appellee.* | ) | |
| | ) | |

Before: BOGGS, BATCHELDER, and BUSH, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.** The plaintiff appeals the denial of a post-judgment motion for attorney's fees and interest in an action that sought recovery of an administrative claim against the FDIC as Receiver for a failed bank. We AFFIRM.

**I.**

The Federal Office of Thrift Supervision closed the failing Home Federal Savings Bank (HFSB) and appointed the Federal Deposit Insurance Corporation (FDIC) as receiver. A man named L. Fallasha Erwin, doing business as Commercial Law Corporation (CLC) and claiming to have been HFSB's legal counsel, submitted an administrative proof of claim for $176,750. The FDIC denied the claim—which was based on a mere two-page invoice with almost no detail —at least putatively because CLC could produce no written retainer[1] or satisfactory proof that

---

[1] Some time much later, CLC did produce a 20-year-old written contract (from 1989) in which HFSB had retained CLC as legal counsel. The contract was not contained in HFSB's records and the district court excluded it as arriving too long after the close of discovery. Our decision in the prior appeal rendered this irrelevant.

CLC had actually performed the alleged services. CLC did produce two liens asserting a secured interest in two bank properties, which the FDIC viewed as suspicious and likely fraudulent.

CLC sued and the FDIC obtained summary judgment on the basis that the absence of a written contract warranted dismissal under the *D'Oench* doctrine.[2] We reversed on appeal, holding that the *D'Oench* doctrine did not apply because it applies to a depositor's security interests whereas CLC's claim was for payment under a simple service contract, akin to claims of an office-supplies vendor or an employee for expense reimbursement. We remanded for a decision on the merits. *See Commercial Law Corp., P.C. v. FDIC*, 777 F.3d 324 (6th Cir. 2015).

On remand, the FDIC tendered to CLC a "receiver's certificate" for $176,750 to satisfy the original claim and moved the court to dismiss the suit. The district court entered judgment for CLC in that amount, as stipulated by the parties, but did not decide whether the "receiver's certificate" satisfied that judgment, despite acknowledging that a dispute remained. The court also left open the question of whether CLC was entitled to interest, costs, or attorney's fees.

Following the entry of that judgment, CLC did not ever pursue in the district court whether the "receiver's certificate" actually satisfied the judgment. Nor did the FDIC.

CLC did move for attorney's fees, pursuant to two provisions of the Equal Access to Justice Act (EAJA), namely 28 U.S.C. § 2412(b) and (d). The district court rejected subsection (b) as a basis for the claim because this case arose from a breach of contract and the contract did not authorize such fees, and rejected subsection (d) because the FDIC's litigation position was

---

[2] In short, the *D'Oench* doctrine holds that agreements with a failed bank are unenforceable if not properly recorded in the bank's records. That is, any agreement that would support a claim against the res held by the FDIC as Receiver for a closed bank is valid only if it (1) is in writing, (2) was executed by the bank contemporaneously with the acquisition of the asset, (3) was approved by the bank's board of directors and memorialized in the minutes, and (4) has been, continuously, from the time of its execution recorded in the bank's official records. *See D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 456–62 (1942) (since codified at 12 U.S.C. § 1823(e)(1)).

"substantially justified." *Commercial Law Corp., P.C. v. FDIC*, No. 10-13275, 2016 WL 4035508, at *4 (E.D. Mich. July 28, 2016). The court denied CLC's motion for attorney's fees.[3]

CLC also moved for interest and costs. The district court held that sovereign immunity barred the award of pre- or post-judgment interest against the FDIC when acting as a Receiver for a failed bank. *Id.* at *7. But the court did grant CLC's motion for costs, which the FDIC had not opposed, and awarded CLC a total amount of $1,710.85. *Id.* at *8.

## II.

CLC raises an array of arguments. We review de novo questions of statutory interpretation. *Brott v. United States*, 858 F.3d 425, 428 (6th Cir. 2017). We review for abuse of discretion the court's determination that a litigation position was "substantially justified" pursuant to the EAJA. *Pierce v. Underwood*, 487 U.S. 552, 559 (1988). And we may affirm on any basis supported by the record. *Sanders v. Jones*, 845 F.3d 721, 731 (6th Cir. 2017).

## A.

CLC first argues that the "receiver's certificate" did not satisfy the judgment. The FDIC had transferred HFSB's assets to a third party, Liberty Bank and Trust Co., and rejected CLC's claim that it had a valid lien on HFSB, meaning that it deemed CLC an *unsecured* creditor. In short, CLC has not been paid and if it is actually an unsecured creditor it likely *will not be* paid. When a receiver issues a "receiver's certificate" to an unsecured creditor, it entitles that creditor to share in the available fund pro rata with all other unsecured claims. If FDIC is correct and CLC is an unsecured creditor, the "receiver's certificate" would satisfy the judgment even

---

[3] The district court also presented four additional or alternative reasons for denying attorney's fees: (1) two federal statutes, 12 U.S.C. §§ 1821(i)(2) and 1825(b)(3), "appear to" prohibit such fees in these circumstances, *Commercial Law Corp.*, 2016 WL 4035508 at *4; (2) an out-of-circuit case held that the EAJA does not apply to the FDIC when acting as a Receiver for a failed bank, *id.* at *5 (citing *Schock v. FDIC*, 118 F. Supp. 2d 165 (D. R.I. 2000) (affirmed on other grounds by *Schock v. United States*, 254 F.3d 1 (1st Cir. 2001))); (3) CLC's misconduct during discovery would "warrant a denial or reduction of fees, [even] if such an award were permissible," *id.* at *6 n.5; and (4) CLC's claim for a discovery sanction against FDIC was "entirely without merit," *id.* at *6.

though CLC will likely not receive any of the $176,750 judgment. CLC, however, contends that it is a *secured* creditor and, because receivers may not issue "receiver's certificates" to secured creditors, the "receiver's certificate" issued here does not satisfy the judgment.

But CLC did not press this argument to resolution in the district court. Because the district court never rendered judgment on this issue, it is not properly before us. On April 11, 2016, CLC moved for interest, costs, and attorney's fees, and that dispute continued until the district court's judgment on July 28, 2016, which CLC did appeal (specifically naming only that order in its Notice of Appeal) on September 26, 2016. That is the present appeal.

## B.

CLC next argues that the Equal Access to Justice Act (EAJA) entitles it to attorney's fees under 28 U.S.C. § 2412(b) and (d), but we find that neither provision actually provides a basis for those fees. Subsection (b) allows for the award of attorney's fees "to the same extent that any other party would be liable under the common law." 28 U.S.C. § 2412(b). In a common-law breach-of-contract suit, a court may award attorney's fees if the contract authorized such fees or if the losing party acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45–46 (1991) (citations omitted). The contract here did not authorize attorney's fees. Nor did the FDIC act in bad faith. The bad-faith standard is a higher standard than "substantial justification" under subsection (d). *United States v. Skeddle*, 45 F. App'x 443, 446 (6th Cir. 2002); *Maritime Mgmt., Inc. v. United States*, 242 F.3d 1326, 1332 n.8 (11th Cir. 2001) ("Bad faith is generally considered to be a higher standard than substantial justification, in the context of the EAJA."). As is discussed below, the FDIC's litigation position was "substantially justified." Thus, subsection (b) does not provide a basis for attorney's fees.

Subsection (d) does not provide a basis for attorney's fees because the FDIC's litigation position was "substantially justified." *See Commercial Law Corp.*, 2016 WL 4035508, at *4.

The FDIC's litigation position—that the *D'Oench* doctrine prevented CLC's claim—persuaded the district court to award summary judgment. On appeal, we reversed that decision but had to extrapolate from out-of-circuit case law to do so, setting new Sixth Circuit law in a published opinion. Although we ultimately held it to be incorrect, the FDIC's position was nonetheless substantially justified, as the district court determined. And, given that we review that determination for abuse of discretion, *see Pierce*, 487 U.S. at 559, even if wrong, we could not conclude that the court was so wrong as to demonstrate an abuse of discretion.

## C.

CLC argues that it is entitled to pre- and post-judgment interest. But sovereign immunity prohibits such an award. *See Cal. Fed. Bank v. United States*, 395 F.3d 1263, 1273–74 (Fed. Cir. 2005) (holding that, because FSLIC—like its successor FDIC—"perform[s] distinctly governmental regulatory functions," it has not "waive[d] sovereign immunity with respect to the grant of prejudgment interest"); *Battista v. FDIC*, 195 F.3d 1113, 1120 (9th Cir. 1999) ("[S]overeign immunity bars an award of interest against the FDIC. Congress has not expressly waived the FDIC's immunity against prejudgment interest, nor does the FDIC fall under the exception of the government's waiver immunity when it operates as a commercial enterprise."); *Resolution Tr. Corp. v. Fed. Sav. & Loan Ins. Corp.*, 25 F.3d 1493, 1506 (10th Cir. 1994) ("[B]ecause Congress anticipated delays in payments on claims for insurance proceeds without providing for prejudgment interest, it did not waive FDIC's sovereign immunity . . . [and] FIRREA did not modify this rule when it placed FSLIC's functions under FDIC." (citations omitted)); *Spawn v. W. Bank-Westheimer*, 989 F.2d 830, 835–38 (5th Cir. 1993).

**D.**

Finally, CLC argues that the district court awarded it costs of $855.00 plus $885.85, which adds up to $1,740.85, but the court's total was only $1,710.85, meaning that the court, via typographical or mathematical error, short-changed CLC by $30.

Obviously, the proper means of fixing such an error is Rule 60(a), which says:

> Corrections Based on Clerical Mistakes; Oversights and Omissions. The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.

Fed. R. Civ. P. 60(a). Even though CLC has failed to ask expressly, we can construe this argument as CLC's seeking leave to file a Rule 60(a) motion, and grant that leave.

**III.**

For the foregoing reasons, we AFFIRM the judgment of the district court.